UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| GARY YARBOROUGH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-CV-241-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Gary Yarborough is confined in the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"). He filed a *pro se* complaint under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* [R. 3] Defendant United States of America has filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment [R. 17] to which Yarborough responds. [R. 21.] For the reasons set forth below, the United States' motion will be granted.

**I.**

Yarborough was incarcerated at the United States Penitentiary-Big Sandy ("Big Sandy") from July 21, 2004 through November 8, 2005.[*] Prior to his arrival, Yarborough was diagnosed with genital warts, a consequence of a sexually-transmitted disease. Because the virus which causes the warts cannot be eradicated, the condition is chronic and treatment is designed to alleviate symptoms by managing the resulting discomfort, rather than cure the underlying cause.

On June 13, 2005, while detained in the Segregation Housing Unit ("SHU") at U.S.P.-Big

---

[*]The Court must accept the plaintiff's factual allegations as true when presented with a motion to dismiss under Federal Rule of Civil Procedure 12(b).

1

Sandy, Yarborough sent a written request for a medical examination to Dr. Vargas, the Health Systems Administrator, complaining of pain and irritation on his testicles and groin area. Vargas granted the request, and the next day Yarborough was examined by Physician's Assistant ("PA") Bhadra. Bhadra's examination was brief, and he indicated that he could find nothing wrong with Yarborough. Yarborough alleges that Bhadra sarcastically remarked that he should not masturbate so much, a remark Yarborough describes as unprofessional and indicative of the BOP's dismissive attitude towards the medical care provided to inmates. Nonetheless, Bhadra prescribed topical ointment for Yarborough to alleviate the burning sensation. Yarborough was examined again by Bhadra on June 17 with the same assessment.

  Shortly thereafter, Yarborough wrote numerous requests to staff and to the warden, asking that he be seen by another doctor or PA Sexauer because he felt Bhadra was not taking his concerns seriously. PA Sexauer examined Yarborough on June 25, and found Yarborough's condition to be normal other than a minor skin rash. Sexauer prescribed an antibiotic to treat the rash, Sulfameth / Trimeth DS 800mg. Throughout July, Yarborough sent numerous additional written requests to staff to be examined by PA Sexauer or Dr. Conrotto and to receive treatment with the "cryosurgery machine" for his genital warts. Dr. Conrotto examined Yarborough on August 3, to address his discomfort, and scheduled a followup examination in another month.

  In September, Yarborough was transferred to USP-Hazelton in West Virginia, where he alleges he continued to receive inadequate medical care from BOP medical staff. On March 30, 2006, Yarborough was transferred to FCI-Williamsburg in South Carolina. On April 4, Yarborough was examined by a physician to address complaints of pain in his penis. Yarborough's complaints, which included penile discomfort and a splattering or split urinary stream, indicated for the first time that he might have genital warts on the walls of his urethral

2

tube. At this time the doctor prescribed medication to address the pain and directed that Yarborough should be examined by a consultant urologist for further evaluation. On May 30, Yarborough returned to sick call because of continued discomfort. Yarborough indicated that the antibiotics prescribed during this visit reduced the discomfort.

On July 5, Yarborough was examined by the contract urologist, Dr. O'Kelly of the Carolinas Hospital System, who diagnosed Yarborough as suffering from genital warts and recommended treatment through cystoscopy and wart removal, which consists of sedating the patient and using a laser to remove surface lesions on the exterior of the penis, followed by dilation of the urethral tube and removal of internal lesions with a cold knife blade. Following approval of the recommendation, the procedure was performed on October 23.

Yarborough has attached to his Complaint several inmate grievance forms he filed between September 2005 to March 2007 at the institutional, regional, and national level. In his grievances, Yarborough complained about the delay in receiving care and about the delay in properly treating the condition.

On January 19, 2007, Yarborough sent a letter to the BOP requesting administrative settlement of his claim under the FTCA. In his letter, Yarborough again contended that the delay in receiving treatment was unnecessary and unreasonable, and requested $25,000.00 in settlement of his claims. On March 22, the BOP acknowledged receipt of his letter, and noted that it was entitled to up to six months to respond to his request. After more than six months had passed without response from the BOP, Yarborough filed the present action on December 10, 2007, as permitted by 28 U.S.C. § 2675.

## II.

### A.

Because the United States has submitted affidavits and exhibits in support of its motion and invited the Court to consider materials extrinsic to the face of the Complaint, the Court must treat its motion to dismiss as one seeking summary judgment pursuant to Rule 56. FED. R. CIV. P. 12(b); *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court should treat motion to dismiss as one for summary judgment when invited to consider matters outside the pleadings); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

Rule 56 requires the entry of summary judgment for the moving party if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). The rule permits a defendant to challenge the viability of the plaintiff's claim by asserting that at least one essential element of plaintiff's claim is not supported by legally-sufficient evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The defendant need not present his own evidence to support this assertion, but need only point to the absence of evidence favoring the plaintiff. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). In response, the plaintiff cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrate that factual questions remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003). If

4

the totality of the evidence submitted -- viewed in a light most favorable to the plaintiff with the benefit of any reasonable factual inferences which can be drawn in his favor, *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005) -- "would require a directed verdict for the moving party," summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the plaintiff to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

**B.**

The FTCA renders the United States "liable in tort for certain damages caused by the negligence of any employee of the Government 'if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Johnston v. United States*, 85 F.3d 217, 219 (5th Cir. 1996) (quoting 28 U.S.C. § 1346(b). Thus if a government employee's conduct would render him or her liable for negligence under Kentucky law, the United States may be held accountable in tort under the FTCA.

In *Heavrin v. Jones*, 2003 WL 21673958 (Ky. App. 2003), the Kentucky Court of Appeals set out the elements of a cause of action for medical malpractice under Kentucky law:

> [t]o establish a prima facie case of medical malpractice, a plaintiff must introduce evidence, in the form of expert testimony, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant, (2) that the defendant departed from that standard, and (3) that the defendant's departure was a proximate cause of the plaintiff's injuries.

*Id*. at *2.

The United States' motion for summary judgment asserts that Yarborough has not presented sufficient evidence to uphold a jury verdict that the medical care provided by the BOP

5

through its physicians fell below the applicable standard of care. More specifically, it contends that once Yarborough's condition was identified as the consequence of genital warts, the treatments he received, including the use of topical ointments, histofreeze spray, and the more invasive cryotherapy removal surgery, constituted the exercise of reasonable medical judgment, and therefore do not fall below the standard of care. In support of its position, Dr. Richard R. Ramirez testifies by affidavit that each of the therapies mentioned above is an appropriate response to the condition, with surgery being the last option as it is the most invasive. Further, treatment is adjusted to the individual patient's response to each therapy. [R. 17-4 at. ¶5-6.]

The United States also refers to the treatment guidelines promulgated by the United States Centers for Disease Control ("CDC"), which indicate:

> [t]reatment of genital warts should be guided by the preference of the patient, the available resources, and the experience of the health care provider. No definitive evidence suggests that any of the available treatments are superior to any other and no single treatment is ideal for all patients and all warts . . . [t]he treatment modality should be changed if a patient has not improved substantially. The majority of genital warts respond within 3 months of therapy. The response to treatment and its side effects should be evaluated throughout the course of therapy.

[R. 17-5 at ¶4.] The CDC guidelines indicate that unless the patient has a compromised immune system or is sexually active (presenting the risk of further transmission), treatment is not urgent. [R. 17-5 at ¶6.]

Having reviewed the affidavit of Dr. Ramirez and the voluminous medical records filed by the United States under seal, the Court concludes that based on the evidence before it, the United States would be entitled to a directed verdict in its favor because no reasonable jury could conclude that the treatment provided Yarborough fell below the applicable standard of care. The essence of Yarborough's complaint is that the BOP's medical professionals failed to provide him

6

with adequate and timely care for his condition.  The former complaint appears to challenge the appropriateness or effectiveness of care provided from June to August 2005; the latter complaint relates to the fact that the urethral cystoscopy was not performed until October 2006.

However, the declaration of Dr. Ramirez explains, and the CDC guidelines confirm, that genital warts may be treated in a variety of ways, and the superiority of one method over the other can be determined only with reference to the patient's responsiveness to that particular treatment regime.  [R. 17-4, 17-6.]  Ramirez points out that after Yarborough was prescribed medication to address testicular pain on August 3 2005, at subsequent medical visits on both August 24, and September 22, Yarborough made no complaints regarding this condition.  BOP medical staff responded to Yarborough's complaints of groin pain with topical ointments and antibiotics to address any concern of infection.  When Yarborough's symptoms suggested the possibility of interior lesions on his urethral wall, he was examined by a contract specialist and a cystoscopy was performed within a matter of months.  The evidence of record is devoid of any indication, other than Yarborough's own declarations, that medical staff were not responsive to his condition or otherwise failed to provide medically-appropriate treatment.  The fact that Yarborough believed a different course of treatment would be more appropriate or effective is simply insufficient to present a viable claim.  *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996); *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.").

This conclusion is warranted where, as here, the applicable substantive law requires the nonmovant to meet a higher burden of proof.  Under such circumstances, the non-movant's

evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey*, 113 F.3d at 642; *Moore*, 992 F.2d at 1444. Kentucky law requires a medical malpractice plaintiff to support his allegation that the defendant physician's treatment did not meet the applicable standard of care with expert testimony to this effect as a part of his *prima facie* case. *Heavrin*, 2003 WL 21673958 (2003); *Andrew v. Begley*, 203 S.W.3d 165 (Ky. App. 2006) ("To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper.") Here, Yarborough has not offered any expert testimony which suggests that his medical treatment was below the applicable standard of care, and the evidence which is present in the record -- from a medical practitioner -- contradicts his assertions otherwise. Yarborough has produced neither evidence that his treatment fell below the applicable standard of care, nor support for his contention in the form of expert testimony. Therefore, summary judgment is granted for the United States.

### III.

Accordingly, **IT IS ORDERED** that:

1. The Motion for Summary Judgment filed by Defendant United States of America [R. 17] is **GRANTED**, and Plaintiff's Complaint [R. 3] is **DISMISSED WITH PREJUDICE**.

2. The Court will enter an appropriate Judgment.

This the 30th day of March, 2009.



Signed By:
*Gregory F. Van Tatenhove*
**United States District Judge**

8